RUSSELL M. WHEELER, *vs.* CLINTON CANAL BANK, WILLIAM S. STEVENS, SAMUEL C. MUNSON, ELKANAH B. COMSTOCK, ELIJAH F. COOK, ALPHONSO B. NEWCOEB, WILLIAM PHELPS, WILLIAM H. ADAMS, SAMUEL POWER, DAVID H. PARKER, WILLIAM M. KNOWLTON, WARREN MESSENGER, WILLIAM A. NELSON, ISAAC ADAMS, WILLIAM F. MOSLEY, DAVID PADDOCK, ISAAC PADDOCK, GEORGE W. WISNER, PETER VAN AVERY, ALFRED JUDSON, JAMES L. CONGER, CHARLES HUBBELL, AND JAMES E. BEERS.

First Circuit.

Wheeler.
*vs.*
Clinton Canal Bank.

Where a bill is filed charging defendants as a voluntary association, combining to defraud such as should receive their notes, *held* that the fact that another creditor has seen fit to treat them as a corporation, and has filed his bill and obtained the appointment of a Receiver of their effects as such, cannot deprive complainant of his remedy in this form, if he can establish the allegations in his bill.

Where bill charges defendants in an original proceding as a fraudulent association, it is no ground of demurrer. that it prays the appointment of a Receiver. The rules concerning judgment creditor's bills do not apply to such a case.

Where remedy at law is difficult and doubtful, this court will entertain jurisdiction!

Courts of Equity have concurrent jurisdiction in cases of fraud.

A bill may be sustained against different persons relative to matters of the same nature, in which all of the defendants were more or less concerned. though not jointly in each act.

This was a hearing on demurrer.

The bill states that under the act known as the general banking law, books were opened at Pontiac, in the county of Oakland, on or about the twentieth day of November, 1837, to receive subscriptions for a banking association to be located at that place, and called the " Clinton Canal Bank, " with a capital stock of fifty thousand dollars, to be divided into one thousand shares of fifty dollars each, That the whole amount of stock was taken, and that on the twenty-third day of November, aforesaid, an election of directors and officers of said bank was duly held   That bonds were executed and filed with the Auditor General, and the directors and stockholders claiming to have complied with the provisions of law issued their bills, and commenced banking business under their corporate name on or about the eleventh day of December, 1837.   The bill then sets out several assignments and transfers of stocks, and consequent changes of officers, and states that in pursuance of an act amendatory to the general banking law, different bonds and mortgages were executed to

the Auditor General as collateral security, at various times from some time in March, 1838, to some time in May of the same year. It then sets out further assignments and changes of officers, and prays a discovery of such other stockholders and officers as may have been interested in said bank. States that the bank continued to do business until about August twenty-second, 1838, since which time it ceased to carry it on, and has had no officers or offices during the past year. That the bank went into operation under, and availed itself of the provisions of the suspension law of June twenty-second, 1837, and did not make a practice of paying its liabilities in specie until about May sixteenth, 1838. That only $2,220,95 of the capital stock was paid in specie, and the balance of the first thirty per cent was paid in specie certificates and stock notes, none of which have been paid, and that no more than the first thirty per cent of the capital stock has ever been paid in. That on the twenty-fourth day of February, 1838, the bank had on hand in specie only $3,164 85, that the average amount on hand from the time of commencing business up to the sixteenth of May, 1838, was less than three thousand dollars, and at no time amounted to more than three thousand five hundred dollars. That on the twenty-fourth day of February aforesaid their circulation amounted to $30,456, and their indebtedness exclusive of circulation, to $7,867. That on the same day the amount due to the bank from its directors was $6,390 81, from stockholders, $3,580, and from other persons, $20,462 80. That previous to the injunction issued in October, 1838, the bank had in circulation over $39,000, and time drafts amounting to more than $25,000, most of which are unpaid, and parcels have been presented for payment from time to time, and payment refused. Charges that during the whole period of its operation, the directors and stockholders owed the bank more than four times the amount of specie and good funds paid in; that at the time when it stopped business, William S. Stevens was owing nearly $20,000, Charles Hubbell more than $5000, and other directors and stockholders owed considerable sums, and that the whole amount of assets reported by the receiver, including these debts is less than $50,000, most of which he considers doubtful. That the bank has never been solvent since January, 1838, and cannot pay more than ten per cent. of its liabilities and has no proper-

ty which can be reached at law.    Charges the subscribers to the bank with forming the association for fraudulent purposes, and that all the stockholders knew and participated in their fraudulent designs and op- erations.    States that complainant is a creditor of the bank, holding its notes and receiver's certificates, that they were presented to receiver for payment and payment refused.    Charges that defendants are individually liable.    Prays the appointment of a receiver, and satisfaction from the assets and property of defendants.

The defendants demurred to the bill, and assigned the following causes :

1. That complainant had an adequate remedy at law.

2. That a receiver has been appointed, and it does not appear that there will be any deficiency of assets.

3. That the defendants are charged in different capacities, and having distinct liabilities.

4. That the stockholders cannot be charged until the property of the directors is found insufficient.

5. That there is no sufficient equity in the bill.

6. That the bill prays for a receiver, while it shows one to have been already appointed, without asking his removal, or showing it to be necessary.

W. DRAPER, appeared for D. Paddock, et. al.

S. G. WATSON, for William Phelps.

RICHARDSON & KNIGHT, for Alfred Judson, et. al.

W. F. MOSELY, in person.

It appears by the said bill that the same is exhibited agains these invidual defendants and the Clinton Canal Bank, and otherst, &c., for several and distinct matters, and causes in many of which it appears by said bill these defendants are not in any manner interested or concerned.

" If a bill blends together a demand by the plaintiff as legatee against the defendant as executor with a demand of the plaintiff in his private capacity against the defendant in his individual character, it is good cause of demurrer. "   4 *John. Ch. Rep.* 199.

" If a bill be brought concerning things of *distinct nature* against

First Circuit. several persons, or against one it is demurrable. 2 *Mad. Ch. p.* 234.
Wheeler. See also 5 *Paige Ch. Rep.* 79. In that case the court says :—
Clinton Canal Bank. "The form and effect of a demurrer to a bill in Chancery for multifariousness is substantially the same as a demurrer to a declaration at law for a misjoinder of parties, or of different causes of actions which cannot be properly litigated in the same suit." "And where a joint claim against two defendants is improperly joined in the same bill with a separate claim against one defendant only, either or both may demur." And the same principle is found in the 6 *Paige* 28, and the authorities there cited. This bill is exhibited against a bank, against directors of the bank, against stockholders of the bank, against the obligors on one bond, in which the penalty is said to be $125,000, against the obligors on another bond, in which the penalty is said to be $75,000, and also against the mortgagors of real estate pledged for the redemption of the bills and liabilities of the said bank.

By said bill it appears that the said association of persons never became a legal corporation or banking company in accordance with the statute.

By the act to organize and regulate banking associations, passed March 15, 1837, it is enacted that " no such association shall commence operations until thirty per centum of the capital stock shall be paid in, in legal money of the United States. "

The bill alleges that the whole of the stock was taken, and that " only $2,220 95 of the capital stock was paid in in specie, the balance of the thirty per cent. being paid in specie certificates or stock notes, that no more was ever paid in, and that none of the certificates or stock notes have been paid." See 32 folio of the bill, see also 9th section of act of 1837, where it says that " all such persons as shall become stockholders of any such association shall, in compliance with the provisions of this act, constitute a body politic in fact and in name, &c. "

By said bill it does not appear that any matter is set forth in said complainant's bill for which he has not an adequate remedy in a court of law.

The rule is this: " In general, courts of Equity will not as-

sume jurisdiction where the powers of the ordinary courts are sufficient for the purposes of justice. " The present suit is brought to recover the amount of the bills and Receiver's receipts now in possession of the complainant. The statute directs that all demands against the bank after the appointment of a Receiver, shall be presented to him ; and a mode of proceeding is prescribed by which all the assets of the bank are to be applied to their payment. Here is an adequate statutory remedy, so far at at least as the assets extend.

There is also an adequate legal remedy which may be pursued upon the liability of the defendants, as a bank, as directors, as stockholders, obligors on the bonds and as mortgagors.

Seth Beach has been appointed by the Chancellor, Receiver of the bank, and as such Receiver, is vested with all the estate of the bank, and is a Trustee for the creditors and stockholders.

By the tenth section of the laws of 1839, page 96, the Receiver is vested with all the estate, real and personal, of the corporation, &c., and is the trustee of the estate, for the benefit of creditors and stockholders.

By the eighth section, the Chancellor is authorized to appoint Receivers, &c., and on such appointment the corporation shall thereupon be dissolved, and shall cease to exist.

As such Trustee the Receiver is the only accountable person, the corporation is defunct, the powers of the defendants, their rights and duties abrogated, and passed over by operation of law to the Receiver, the only person known in the law, in the place of said corporation. As to power of Trustees, see 6 *Mumf. R.* 366, 2 *Paige*, 21, 438.

The bill prays for the appointment of a Receiver, when it appears from said bill that a Receiver had before been appointed to take charge of the estate and effects of said bank, without showing that said appointment had been obtained by collusion or fraud, or that said Receiver was an improper person to discharge the duties of said trust, and seeking his removal.

The remedy of the complainant, for the appointment of a new Receiver, is by filing a supplemental bill ; see 5 *Paige* 46. And al-

First Circuit. though the forty-second section of the act, allows any creditor to
Wheeler. file his bill against directors and and trustees, and to proceed as in
Clinton Ca- other cases, yet it was never intended to apply in a case where a
nal Bank. Receiver had been appointed, and the property and effects transfer-
red from the bank and its officers to the trustee.

It would in effect be authorizing him to do an act by which he
could derive no benefit whatever.

If the Receiver is an improper person, then the remedy was by
removal, on application, founded on petition or affidavits or other evi-
dence of improper conduct, and that the trust funds were in dan-
ger of being squandered. See *Hop. Rep.* 435.

The complainant has not alleged that he had obtained any judg-
ment or decree against the defendants or either of them, or that exe-
cutions had been issued and returned unsatisfied.

This suit having been instituted in a case, not within the statute of
1839, may have been intended as a creditors bill so called, under the
twenty-fifth section of chapter two, title one, part three of the Re-
vised Statutes, of the general powers, duties and jurisdiction of the
court of Chancery. *R. S.* 365.

And this section of the act requires that an execution should have
issued upon a judgment at law against the property of the defendant
shall have been returned unsatisfied in whole or in part, which is not
alleged in this bill. *See Chancery Rule,* 109.

The bill does not allege that the complainant knew, or had reason
to believe that the defendants or either of them has or had equitable
interest, things in action or other property of the value of one hun-
dred dollars, or more, exclusive of all prior claims, which the com-
plainant had been unable to discover and reach by execution. *Chan-
cery Rule,* 109.

The bill does not charge that it is not exhibited by collusion with the
defendants or for the purpose of protecting the property and effects
of the debtor against the claims of the creditors, and that said bill
was filed for the sole purpose of compelling payment and satisfaction
of complainant's own debt. *Chancery Rule,* 109.

E. C. SEAMAN, contra.

1. The bill shows that the subscribers to the stock of this bank-
ing company, did not comply with the conditions of the general bank-

ing act; that is they did not pay in thirty per cent of the stock and comply with those provisions of the statute which constitute a condition precedent to their becoming a corporation; but, on the contrary, that all their proceedings are based on a fraudulent violation of the statute, which was used merely as a cover or device under which they carried on their fraudulent schemes and practices; they therefore did not become a legal corporation, but constituted a joint stock unincorporated banking company, and are liable individually as copartners in a swindling operation. See section *ninth* of general banking law, and section *fourth* of the amended act.

2. A court of Chancery has jurisdiction of the case, independent of any statute, and can enforce the collection of the plaintiffs claim against the directors and stockholders of the company on the following grounds:

1st. On account of the convenience of enforcing contributions between the several defendants in proportion to the amount of stock held by each. See the case of *Briggs vs. Penniman*, 1. *Hop. Ch. Rep.* 300; 8 *Cow. Rep.* 387; *Mandeville vs. Briggs*, 2 *Pet. Rep.* 482; 8 *Peters R.* 256.

All the defendants are liable in their individual capacity jointly and therefore the bill is not multifarious. *Brinkerhoof vs. Brown*, 6 *J. C. R.* 139 to 159. *See more particularly pages* 153 *and '*4. All combined to defraud, although the defendants performed distinct parts in the drama of fraud, all tending to one point. *Fellows vs. Fellows*, 4 *Cow. Rep.* 682, *and Campbell vs. McKay*, 7 *Simons* 564; *Story's Eq. Pl.* 530 *and* 539.

Persons liable on a contingency are proper parties, defendants in equity, *Story's Eq. Pl. sections* 74 *and* 75, *on page* 76 *and* 77, *section* 199, *page* 152, *and sections* 169, 172, 173 *and* 174; *pages* 159, 160, 151 *and* 173; *sec.* 232 *page* 199 *and* 200; *sec.* 224, *page* 196.

In a variety of cases, the plaintiff may or may not join certain persons as parties, and defendants at his election. *Story's Eq. Pl. section* 221, *page* 194; *section* 169, *pages* 159 *and* 160; 2 *Paige, R.* 279.

2nd. In consequence of the frequent transfers of stock in this case as well as the frequent change of directors or some of them, and the difficulty or impossibility of showing when the notes or bills of the

First Circuit.
〜〜〜
Wheeler.
*vs.*
Clinton Ca-
nal Bank.
bank on which this suit was commenced, were issued, it would be difficult if not impossible for the plaintiff to determine on whom to fix the liability at law, and his remedy if any at law, would therefore be doubtful and difficult, and on that account a court of Equity has jurisdiction. *American Insurance Co. vs. Fisk*, 1 *Paige Ch. Rep.* 92 ; *Weymouth vs. Boyer*, 1 *Ves. Jum.* 416.

3rd. The transactions of the defendants are fraudulent, and they used the general banking law merely as a cover for their fraudulent devices and schemes. A court of Equity has concurrent jurisdiction with courts of law in matters of fraud. *Colt vs. Wollister and Arnold* 2 *P. Williams*, 156; *Green vs. Barrett;* 1 *Simons*, 45, *do* 37; *Blair vs. Agar*, 2 *Simons*, 289.

4th. The statute of Michigan of 1839 for the voluntary dissolution of corporations, and for other purposes, applies only to legal corporations, and not to cases of this kind, where the company did not become a legal corporation. That statute also gives an accumulative remedy, and does not take away the usual remedy to which the creditors were entitled in equity previous to the statute. We claim the common remedy in equity independent of the statute.— *Crittenden vs. Wilson*, 5 *Cow.* 165.

THE CHANCELLOR.—The bill in this cause subsstantially charges the defendants with having combined under the color merely, of the general banking law of this state, for the purpose of defrauding the complainant and other persons, who should receive the notes of said banking association. It not only charges that the original stockholders and officers of the institution, but also, that the persons severally charged with having become subsequent purchasers of the stock, purchased for the purpose of aiding in such fraud and with the intent and design to deceive and defraud the complainant and all the creditors of said association. It purports to charge them and each of them in their individual capacities as members of a fraudulent copartnership, or association. A variety of questions have been raised upon the different demurrers. It will not be necessary to notice all the points raised at the argument, as the grounds upon which the bill is sustained, and the demurrers overruled, will appear in the opinion.

The complainant in this case seeks to charge the defendants as a vol-
untary association, who under the pretence and color of the general
banking law of this state have conspired to defraud the complainant,
and such others as should receive the notes of said association.  The
fact that another creditor has seen fit to treat them as a corporation,
and has filed his bill and obtained the appointment of a Receiver of
the effects of this corporation, cannot deprive this complainant of his
remedy, in this form, if he can establish the truth of the allegations
of his bill.   The objection that the bill contains a prayer. for the ap-
pointment of a Receiver is not a good cause of demurrer; it may or
may not have been necessary, but is not such an objection as can
sustain the demurrer.   This is not what is termed a creditors bill ;
but on the contrary, it seeks to charge the defendants in an original
proceeding as members of a fraudulent association or co-partnership.
The objections therefore that the complainant has not in the allega-
tions in his bill, conformed to the rules required in creditors bills,
have no application, from the view I take of the scope and objects of
the bill.   Another cause of demurrer is that the complainant has an
adequate remedy at law, and therefore a court of Chancery has not
jurisdiction.   The frequent transfers of stock and changes of inter-
est, and the extraordinary manner in which the business has been
conducted, according to the showing in the bill, would render the
complainant's remedy at law both difficult and doubtful; this of itself
is sufficient to give this court jurisdiction.  1 *Paige R.* 920.  Courts of
Chancery have also concurrent jurisdiction in cases of fraud.   The
objection of multifariousness, that the several directors and stockhol-
ders are made parties, notwithstanding they were connected with this
association at different periods, and have distinct rights and liabilities
is the next and principal remaining question.  From the manner in
which the business was conducted, it seems to me that the course the
complainant has pursued was the proper one.   The stockholders and
directors only, are parties, and it is alleged that they all performed
different parts in the same drama.   A bill may be sustained against
different persons relative to matters of the same nature, in which all
the defendants were more or less concerned, though not jointly in
each act.   Should it prove in the event that any of these defendants
were not partners in the concern at the time the notes on which the

First Circuit. complainant prosecutes were issued, they may not be liable to contri-
bute to their payment. But if it proves true that this was a fraudu-
Wheeler.
vs.
Clinton Ca-  lent combination, merely under the pretence of the statute, in which
nal Bank.
the defendants all participated to defraud the complainant, it is but just that each and all should be held responsible to the creditors who have been defrauded in this way. From the view I have taken of this bill it was not necessary that the Receiver should have been made a party. The complainant is entitled to his dividend from whatever may be obtained from the property of this concern in the hands of the Receiver, without making him a party, and without a waiver of his rights against the defendants in this form.

Demurrer overruled.